UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JENNIFER SANCHEZ,

        Plaintiff,

v.

KEVIN K. McALLENAN, Acting Secretary, United States Department of Homeland Security, Immigration and Customs Enforcement,

        Defendant.

C17-1353 TSZ

ORDER

By Minute Order entered August 7, 2019, docket no. 70, the Court granted in part and denied in part defendant's motion to dismiss for lack of subject matter jurisdiction and failure to state a claim and for summary judgment, docket no. 55, and granted in part and denied in part plaintiff's cross-motion for partial summary judgment, docket no. 60. The following order sets forth the Court's reasoning.

**Discussion**

**A.**    **Termination**

Plaintiff Jennifer Sanchez was previously employed by Immigration and Customs Enforcement ("ICE"). She was terminated on October 17, 2016. *See* Ex. D to Asher

ORDER - 1

Decl. (docket no. 56-4). The stated grounds for removal were (i) conduct unbecoming a law enforcement officer, (ii) misuse of position, (iii) failure to cooperate with an investigation, and (iv) lack of candor in connection with plaintiff's arrest in March 2014 for driving under the influence of intoxicating liquor ("DUI"). Id. On November 2, 2016, plaintiff appealed ICE's adverse employment action to the Merit Systems Protection Board ("MSPB") pursuant to 5 U.S.C. §§ 7512, 7513(d), & 7701. See Ex. 38 to Davis Decl. (docket no. 65-5). On August 10, 2017, the MSPB affirmed ICE's discharge of plaintiff. Ex. G to Chan Decl. (docket no. 58-7). Plaintiff filed this action on September 8, 2017. See Compl. (docket no. 1). With respect to her request for judicial review of the MSPB's affirmance of ICE's removal decision, plaintiff has timely appealed, and the Court has jurisdiction. See 5 U.S.C. § 7703(b)(2); 5 C.F.R. § 1201.175; see also Sloan v. West, 140 F.3d 1255, 1261 & n.19 (9th Cir. 1998).

Plaintiff's appeal to the MSPB, which challenged an adverse employment action within the MSPB's purview, see 5 U.S.C. § 7512, and asserted a related violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-16, constituted a "mixed case." In a "mixed case," the Court accords deference to the MSPB's determination of claims not involving discrimination, but reviews de novo the MSPB's resolution of discrimination claims. Sloan, 140 F.3d at 1260; see Washington v. Garrett, 10 F.3d 1421, 1428 (9th Cir. 1993) ("Upon reaching district court, the complainant is entitled to trial de novo on her discrimination claim.").

With regard to whether plaintiff establishes a prima facie case of discrimination and/or retaliation as to ICE's decision to terminate her, and whether ICE's articulated

reasons for discharging plaintiff are pretextual, see Washington, 10 F.3d at 1432-33 (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)), the Court concludes that genuine disputes of material fact preclude summary judgment. See Fed. R. Civ. P. 56(a). Even if ICE had legitimate, non-discriminatory grounds for disciplining plaintiff,[1] the crux of plaintiff's claims is not whether some sanction was warranted, but rather whether the punishment that ICE imposed was comparable to the treatment male colleagues received for similar misconduct or was more severe because it was motivated by plaintiff's gender or prior complaints about discrimination. Drawing all "justifiable inferences" from the evidence in plaintiff's favor, see *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986), the Court is persuaded that the dispositive issues are factual in nature, and thus, with respect to plaintiff's discrimination and retaliation claims relating to her removal, the parties' cross-motions for summary judgment are DENIED.

---

[1] Plaintiff insists that she had not consumed any alcohol and was not intoxicated on the night in question. Johnny Minyard, who was with plaintiff at the time, provided "shifting statements" about the events at issue, initially informing investigators that he had purchased two alcoholic beverages for plaintiff, later clarifying that he bought two rounds for their group, but did not see plaintiff drink any of the liquor, and then telling the MSPB that plaintiff consumed only soda, which he purchased, and water at the locations they visited, namely McGuire's Irish Restaurant and Pub, Yakima Sports Center, and Brews and Cues. See Ex. G to Chan Decl. (docket no. 58-7 at 13-19). In contrast, Melissa Tillett (now Melissa Oberloh) testified that, while at Yakima Sports Center on the evening of March 17, 2014 (St. Patrick's Day), plaintiff drank two Irish Car Bombs (each containing a shot of Irish cream and whiskey dropped into a glass of stout). *Id.* (docket no. 58-7 at 15-17). The MSPB found Tillett more credible than plaintiff or Minyard. See *id.* (docket no. 58-7 at 17-19). In addition, the MSPB found Yakima Police Officer Ryan Urlacher, who administered field sobriety tests and arrested plaintiff, to be "straight-forward, consistent with the record, and persuasive," as well as "credible," despite plaintiff's efforts to discredit him as a "dirty cop." *Id.* (docket no. 58-7 at 19-26). Unlike the MSPB, the Court may not, in deciding the pending cross-motions for summary judgment, make determinations about the veracity of witnesses, and it must leave for a jury to decide what transpired prior to and during the course of plaintiff's arrest for DUI.

## B. Other Discrete Adverse Employment Actions

### 1. Failure to Timely Exhaust

Plaintiff alleges that ICE discriminated or retaliated against her in myriad other ways besides terminating her. Defendant contends that, with a few exceptions, plaintiff's claims are time barred and seeks dismissal under Rule 12(b)(1). To establish federal subject matter jurisdiction, a plaintiff must exhaust administrative remedies before filing suit on a Title VII claim. *Lyons v. England*, 307 F.3d 1092, 1103 (9th Cir. 2002). None of the actions, other than discharge, that plaintiff contends were discriminatory or retaliatory could be challenged before the MSPB, and thus, plaintiff's sole avenue of administrative relief was to consult with an equal employment opportunity ("EEO") counselor. *See Shelley v. Geren*, 666 F.3d 599, 605 (9th Cir. 2012). The time limit for consulting with an EEO counselor is 45 days after the action alleged to be discriminatory or retaliatory. *See* 29 C.F.R. § 1614.105(a). The Ninth Circuit has repeatedly held that, although this regulation "'does not carry the full weight of statutory authority,' . . . absent waiver, estoppel, or equitable tolling, 'failure to comply with this regulation [is] . . . fatal to a federal employee's discrimination claim' in federal court." *Shelley*, 666 F.3d at 605 (quoting *Kraus v. Presidio Trust Facilities Div./Residential Mgmt. Branch*, 572 F.3d 1039, 1043 (9th Cir. 2009) (alterations in original, quoting *Lyons*, 307 F.3d at 1105)).

Plaintiff first contacted an EEO counselor on November 28, 2016. Ex. D to Chan Decl. (docket no. 58-4). Although defendant initially asserted that the 45-day exhaustion period should be calculated from this date, defendant subsequently assumed for the sake of argument that the cutoff date for plaintiff's discrimination and/or retaliation claims is

September 18, 2016, which is 45 days before November 2, 2016, when plaintiff appealed her removal to the MSPB. <u>See</u> Def.'s Reply at 2 (docket no. 66).

The following ICE actions predate September 18, 2016:

- Assistant Field Office Director Michael Melendez's May 29, 2012, and May 30, 2012, instructions to plaintiff (via her supervisor) that she write and re-write a memorandum concerning the breakdown of a government vehicle assigned to her; <u>see</u> Ex. T to Hicks Decl. (docket no. 60-4);

- Field Office Director ("FOD") Nathalie R. Asher's December 19, 2012, denial of plaintiff's request for a transfer[2] to the Tukwila Field Office; <u>see</u> Ex. G to Asher Decl. (docket no. 56-7);

- FOD Asher's November 21, 2013, imposition of a one-day suspension (which plaintiff served on December 31, 2013) relating to plaintiff's loss of government credentials; <u>see</u> Ex. B to Chan Decl. (docket no. 63-2);

- Supervisory Immigration Enforcement Agent Koby D. William's August 11, 2014, restriction for 30 days of plaintiff's ability to participate in work-related activities that include driving a government-owned vehicle; <u>see</u> Ex. 4 to Sanchez Decl. (docket no. 65-9);

- FOD Asher's August 20, 2014, cancellation of plaintiff's request for an employer-owned vehicle exemption to the Ignition Interlock Device requirement imposed by the Washington State Department of Licensing; <u>see</u> Ex. 5 to Sanchez Decl. (docket no. 65-9); and

- Denial of plaintiff's request on September 12, 2016, to attend training; <u>see</u> Ex. 8 to Sanchez Decl. (docket no. 65-9).

With respect to these discrete decisions, plaintiff's motion for partial summary judgment is DENIED, defendant's motion to dismiss for lack of jurisdiction is GRANTED, and

---

[2] In January 2013, plaintiff applied to be an Immigration Enforcement Agent for the Seattle area of responsibility. <u>See</u> Ex. 7 to Sanchez Decl. (docket no. 65-9) (regarding Job Announcement No. LAG-ERO-823592-DM-204). With regard to this vacancy, plaintiff's discrimination and retaliation claims are not only untimely, they lack merit because the potential position was never funded, and no candidate was selected to fill it. <u>See</u> Asher Decl. at ¶ 21 & Ex. H (docket no. 56).

ORDER - 5

1 plaintiff's discrimination and/or retaliation claims relating thereto are DISMISSED for

2 failure to timely exhaust administrative remedies.

**2. <u>Failure to State Claim</u>**

Two other discrete ICE actions, namely the denial of plaintiff's request to attend a training program titled "Terrorism Recognition, Awareness, and Prevention Partnership," <u>see</u> Ex. 8 to Sanchez Decl. (docket no. 65-9),[3] and the denial of a within-grade pay increase ("WIGI"), occurred on or after the 45-day cutoff of September 18, 2016. With respect to the first matter, defendant seeks summary judgment, indicating that plaintiff's training request was denied because plaintiff was not, at the time, performing law enforcement duties, and the anti-terrorism program lacked "the requisite nexus to her job." <u>See</u> Wilcox Decl. at ¶ 23 (docket no. 67). Moreover, plaintiff has not provided evidence of any male colleague who was permitted to attend the anti-terrorism training or any other program unrelated to his responsibilities. On these grounds, plaintiff's motion for partial summary judgment is DENIED, defendant's motion for summary judgment is GRANTED, and plaintiff's claim that she was denied training for discriminatory and/or retaliatory reasons is DISMISSED with prejudice.

With respect to the WIGI denial, defendant contends the issue is moot because the WIGI was subsequently granted, retroactive to September 18, 2016, which resulted in

---

[3] Plaintiff alleges that numerous other training requests were denied, but she has not provided any specific information about those matters, which would nevertheless be time barred if they predated September 18, 2016.

plaintiff receiving a net amount of $141.86.  <u>See</u> Ex. I to Asher Decl. (docket no. 56-9); Wilcox Decl. at ¶ 20 (docket no. 67).  The Court agrees that plaintiff's claim concerning the initially denied, but later granted, pay increase is moot.  Plaintiff's related claim for denial of due process in violation of 42 U.S.C. § 1983 also fails to state a claim.  Defendant asserts that plaintiff's § 1983 claim is barred by sovereign immunity, citing <u>Jachetta v. United States</u>, 653 F.3d 898 (9th Cir. 2011), which stands for the proposition that a federal agency is not a "person" subject to liability under § 1983, <u>see id.</u> at 908, but plaintiff has not sued a federal agency.  The problem with plaintiff's § 1983 claim is simply an inability to show that the defendant she has named, who is the secretary of a federal agency, was acting under color of state (as opposed to federal) law.  <u>See Morse v. N. Coast Opportunities, Inc.</u>, 118 F.3d 1338, 1343 (9th Cir. 1997) ("by its very terms, § 1983 precludes liability in federal government actors").  With respect to plaintiff's claims that the WIGI denial was discriminatory, retaliatory, and/or a violation of § 1983, plaintiff's motion for partial summary judgment is DENIED, defendant's motion to dismiss is GRANTED, and such claims are DISMISSED as moot and/or for failure to plead a claim on which relief can be granted.  <u>See</u> Fed. R. Civ. P. 12(b)(6).

**C.      Sexual Harassment / Hostile Work Environment**

Defendant contends that plaintiff's sexual harassment / hostile work environment claim should be dismissed for one or more of the following reasons:  (i) failure to timely exhaust administrative remedies; (ii) failure to establish harassment that was "sufficiently severe or pervasive [as] to alter the conditions of [plaintiff's] employment and create an abusive working environment," <u>see Ray v. Henderson</u>, 217 F.3d 1234, 1245 (9th Cir.

2000) (quoting <u>Harris v. Forklift Sys., Inc.</u>, 510 U.S. 17, 21 (1993)); and (iii) failure to show that the conduct about which plaintiff complains was related to her gender.

1. **<u>Timeliness</u>**

Defendant moves to dismiss under Rule 12(b)(1) on the ground that the Court lacks jurisdiction because plaintiff failed to timely exhaust her administrative remedies with respect to her sexual harassment / hostile work environment claim. In response, plaintiff relies on the "continuing violation" doctrine, pursuant to which all non-discrete acts contributing to the alleged hostile work environment are treated as one unlawful employment practice, and plaintiff's claim is considered timely filed as long as one of the acts at issue occurred during the limitations period. <u>See</u> <u>Nat'l R.R. Passenger Corp. v. Morgan</u>, 536 U.S. 101, 117-18 (2002). To constitute one unlawful employment practice for purposes of the "continuing violation" doctrine, the various acts must have some relationship to each other. <u>See</u> <u>id.</u> at 118. Discrete acts, however, such as termination, suspension, failure to promote, and denial of transfer, cannot qualify as "related acts," and cannot be cobbled together and/or with non-discrete acts to allege that a harassment claim is timely. <u>See</u> <u>id.</u> at 108-15.

Defendant appears to concede, for purposes of the pending Rule 12(b)(1) motion, that at least one of the non-discrete acts on which plaintiff bases her harassment claim, namely the display of posters depicting men holding guns to the heads of terrified women, continued until the last day of plaintiff's employment, October 17, 2016, which was within the 45-day period before plaintiff appealed her termination to the MSPB. <u>See</u> Sanchez Dep. at 194:9-14, Ex. A to Hicks Decl. (docket no. 60-2); <u>see also</u> Def.'s Reply

at 3 (docket no. 66).  Defendant argues, however, that this behavior does not have the requisite relationship to the other acts on which plaintiff relies to support her hostile work environment claim.  The Court cannot reach defendant's proposed conclusion under the applicable standards.  *See* Cholakyan v. Mercedes-Benz USA, LLC, 2012 WL 12861143 at *17 (C.D. Cal. Jan. 12, 2012) (in deciding a Rule 12(b)(1) motion on the declarations, without holding an evidentiary hearing, the Court may consider evidence outside the pleadings, "but all factual disputes should be resolved in favor of the nonmoving party" (citing *Dreier v. United States*, 106 F.3d 844, 847 (9th Cir. 1996))).

In addition to the offensive posters hanging in Colin Vincent's office, plaintiff has described two other actions taken by this same coworker, namely (i) remarking to plaintiff, in front of other male peers, that "You women just want all the attention, don't you"; and (ii) participating in the "He-Man Woman-Haters Club."  *See* Sanchez Dep. at 193:23-194:8, Ex. A to Hicks Decl. (docket no. 60-2).  Although the conduct varied, the perpetrator and the gender-based animus remained constant.  Moreover, contrary to defendant's assertion that the various non-discrete actions at issue involved different individuals, plaintiff's second-line supervisor, Michael Gladish, did not change from the end of 2012 or beginning of 2013 until her termination in late 2016, *see* Gladish Dep. at 27:2-12, Ex. L to Hicks Decl. (docket no. 60-3), and plaintiff's internal complaints about the problems she was facing were consistently addressed to Gladish.  Plaintiff has presented evidence of an alleged "continuing violation" involving at least one act that occurred within the 45-day limitation period, and thus, defendant's Rule 12(b)(1) motion

to dismiss plaintiff's sexual harassment / hostile work environment claim for failure to timely exhaust administrative remedies is DENIED.

   2.  **Actionable Claim**

Not every insult or harassing comment will support a claim for harassment or hostile work environment. *See Ray*, 217 F.3d at 1245. To determine whether harassment was sufficiently "severe or pervasive" or the environment was "sufficiently hostile" to be actionable, the Court must examine the "totality of the circumstances," including (i) the frequency of the harassing conduct, (ii) the severity of the harassing activity, (iii) whether the behavior was physically threatening or humiliating or merely involved offensive statements, and (iv) whether the harassment unreasonably interfered with plaintiff's work performance. *See id.* Reviewing the evidence in light of these factors and drawing all reasonable inferences in plaintiff's favor, the Court concludes that whether plaintiff's sexual harassment / hostile work environment claim is actionable involves questions of fact precluding summary judgment.

   3.  **Based on Gender**

The scope of plaintiff's sexual harassment / hostile work environment claim can, however, be narrowed. Defendant argues that, because plaintiff relies on non-discrete acts not explicitly linked to gender, she cannot establish the requisite pattern of repeated harassment "because of sex," citing *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75 (1998). *Oncale*, however, eschews any standard that examines only whether "the words used have sexual content or connotations." *Id.* at 80. *Oncale* instead recognizes that the "critical issue" for Title VII claims is "whether members of one sex are exposed

1  to disadvantageous terms or conditions of employment to which members of the other
2  sex are not exposed." *Id.*

3    Plaintiff's sexual harassment / hostile work environment claim is premised on at
4  least three forms of behavior that were unaccompanied by expressly discriminatory or
5  sexually suggestive statements, namely (i) one or more co-workers rummaging through
6  and re-arranging her office; (ii) one or more peers circumventing her by making the
7  detainee transportation arrangements for which she was responsible without consulting or
8  informing her; and (iii) male co-workers undermining her when she conducted mandatory
9  firearm training by refusing to attend and/or ignoring her when they were present.

10   The Court is persuaded that plaintiff cannot include within the scope of her sexual
11 harassment / hostile work environment claim the allegations about intrusions of her work
12 space. In her memorandum to Gladish dated October 17, 2014, plaintiff indicated that,
13 when she had previously reported the security violations to management and co-workers,
14 they "all agreed that they had each experienced a similar occurrence but could not prove
15 who did it." Ex. 9 to Sanchez Decl. (docket no. 65-9). The repeated disturbances of
16 office items were apparently not targeted at plaintiff or even at female personnel, but
17 rather affected everyone, including male employees, and thus, plaintiff cannot establish
18 that such actions were "because of . . . sex." *See* 42 U.S.C. § 2000e-2(a)(1).

19   With regard to plaintiff's grievances about being undermined by her male peers in
20 the performance of her duties as transportation coordinator and firearms instructor, the
21 Court is satisfied that whether these actions were "because of sex" is a factual question
22 precluding summary judgment. To hold, as defendant suggests, that this conduct cannot
23

ORDER - 11

be considered "because of sex" would effectively insulate from liability all forms of sexually harassing behavior unless the offending individuals contemporaneously announced their gender-based animus.[4]  Neither Title VII nor the jurisprudence interpreting it supports such result.  With regard to plaintiff's sexual harassment / hostile work environment claim, plaintiff's motion for partial summary judgment is DENIED, defendant's motion for summary judgment is GRANTED in part and DENIED in part, and plaintiff will be permitted at trial to pursue such claim, as narrowed by this Order to exclude the repeated disturbances of plaintiff's office items.

**D.     Affirmative Defenses**

Plaintiff seeks to strike all of the defenses pleaded in defendant's Answer, docket no. 7.  As indicated in the Minute Order entered August 7, 2019, docket no. 70, defendant has made no showing that the Acting Secretary of the United States Department of Homeland Security is not the proper defendant pursuant to 42 U.S.C. § 2000e-16(c).  Thus, plaintiff's motion for partial summary judgment is GRANTED as to the eighth defense that no basis exists for imputing liability to defendant, and such defense is STRICKEN.  Plaintiff's motion is otherwise DENIED.  Defendant has prevailed in part on the first (failure to state a claim), second (lack of jurisdiction), third (failure to

---

[4] Plaintiff asserts, as part of her sexual harassment / hostile work environment claim, that male co-workers frequently commented about her body, particularly her breasts.  See Dye Dep. at 27:11-28:6, Ex. B to Hicks Decl. (docket no. 60-2); Williams Dep. at 35:14-36:6, Ex. C to Hicks Decl. (docket no. 60-2).  Whether these remarks were ever made in plaintiff's presence is unclear.  See Dye Dep. at 28:16-22, Ex. B to Hicks Decl. (docket no. 60-2); Williams Dep. at 36:8-23, Ex. C to Hicks Decl. (docket no. 60-2).

exhaust), and fourth (failure to timely exhaust) defenses, and plaintiff's request to strike them lacks merit. Because, however, the Court has ruled on these defenses, they will not be in issue at trial, and should not be included in the proposed Pretrial Order. With regard to all other defenses, namely the fifth (failure to state a prima facie case), sixth (lawful manner), seventh (good faith), ninth (reasonable care), tenth (failure to mitigate), and eleventh (no punitive damages) defenses, genuine disputes of material fact preclude summary judgment, and defendant is entitled to assert such defenses at trial.

**Conclusion**

For the foregoing reasons, the Court previously granted in part and denied in part defendant's motion to dismiss and for summary judgment, docket no. 55, and granted in part and denied in part plaintiff's motion for partial summary judgment, docket no. 60. The claims remaining for trial are (i) discriminatory and/or retaliatory discharge, and (ii) sexual harassment / hostile work environment, and defendant may assert the fifth, sixth, seventh, ninth, tenth, and eleventh defenses set forth in the Answer, docket no. 7.

The Clerk is directed to send a copy of this Order to all counsel of record.

IT IS SO ORDERED.

Dated this 13th day of August, 2019.

/s/ Thomas S. Zilly

Thomas S. Zilly
United States District Judge